UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WEST MARINE PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID J. BUTTRICK, <br><br> Defendant. | Civil Action No.: 1:23-cv-10878 |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff West Marine Products, Inc. ("West Marine" or the "Company") brings this action for preliminary and permanent injunctive relief and monetary damages against Defendant David J. Buttrick as a result of his misappropriation of the Company's confidential and proprietary information and trade secrets.

**The Parties**

1. West Marine is a Florida corporation that conducts business throughout the United States. West Marine's corporate headquarters is located in Fort Lauderdale, Florida.

2. Buttrick is a former employee of West Marine who resides in the Commonwealth of Massachusetts and formerly worked for the Company in Massachusetts.

**Jurisdiction and Venue**

3. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this dispute because the Company's claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, raise federal questions. The Company's state law claims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claims relate so closely to the

federal questions that those claims form part of the same case or controversy. Pursuant to 28 U.S.C. § 1332, this Court also has subject matter jurisdiction over this dispute because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

4. The Court has personal jurisdiction over Defendant Buttrick under Mass. G.L. c. 223A, § 2 because he resides in the Commonwealth of Massachusetts, and under Mass. G.L. c. 223A, § 3(a), (c) and (d), because this action arises from his transaction of business in the Commonwealth and from his actions in the Commonwealth causing tortious injury to the Company in the Commonwealth.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the Company's claims occurred in the District of Massachusetts, and under 28 U.S.C. § 1391(c), because Buttrick is subject to the Court's jurisdiction with respect to this action.

## **West Marine is a Leader in the Boating Supplies Industry**

6. West Marine is the world's largest boating supply retailer. For more than 50 years, West Marine has been the premier retailer of boating, fishing, sailing and paddling gear. With more than 235 stores located in 38 states and Puerto Rico and an eCommerce website reaching domestic, international and professional customers, West Marine is recognized as a leading resource for cruisers, sailors, anglers and paddlesports enthusiasts. Throughout the years, West Marine has continued to rely on outstanding customer service, selection and quality as its anchor and the secret of its success.

7. West Marine Pro ("Pro Division") is the wholesale division of West Marine, and is one of the largest wholesale distributors of marine products and accessories in the world.

West Marine Pro distributes a broad selection of marine accessories and products from over 1000 major marine vendors.

8. Despite the Company's overwhelming success in the industry, the marine products and accessories industry is highly competitive, with tremendous external pressure for profit margins. Remaining competitive in the industry requires careful short- and long-term planning, constant innovation, rapid response to consumer demand and unwavering quality control.

### West Marine Employed Buttrick in a Position of Significant Trust

9. On or about October 3, 1994, Buttrick began his long tenure with the Company as a full-time Pro Outside Sales Representative of the Pro Division in the Northeastern United States.  He held this position until April 5, 2023.

10. As a Pro Outside Sales Representative, Buttrick was responsible for developing profitable relationships for the Company in his assigned market, developing new business and maintaining existing key account relationships, as well as strategic account and territory planning.

11. Buttrick was one of the most senior and experienced sales representative on the team.

12. For many years, Buttrick's former manager, Bob Cox, used Buttrick as a backup manager and, when Cox was away, Buttrick served as interim manager of the Northeastern United States.

13. In his role as backup manager to Cox, Buttrick received access to certain confidential and proprietary Company information, including but not limited to sales budgets and profit statements.

**The Company Provided Buttrick With Access to its Highly-Sensitive Confidential and Proprietary Information in Connection with his Job Duties and Responsibilities**

14. As sales representative and interim manager, Buttrick had access to considerable highly confidential information and trade secrets—information that the Company vigorously protects from its competitors. For example, Buttrick had access to:

   a. Financial information relating to the Company's product planning and innovation strategy, including information regarding trade, gross sales, net sales, and sales growth.

   b. Financial information regarding sales and general administrative charges, which showed how much it costs the Company to operate, the organizational structure behind the Company's operation, the financial efficacy of using a particular organizational structure.

   c. Territory planning documents, including all West Marine Pro customers in the Northeast, their contact information and sales and margin history with West Marine.

   d. Customer lists, customer sales data, account data, and historic sales and account data.

15. The above-referenced Confidential Information, all of which Buttrick had access to during his employment, is highly sensitive, commercially valuable, and would be extremely useful to competitors of the Company in their efforts to compete with West Marine.

16. The Company invests substantial time, money, and other resources to develop this Confidential Information and to protect it from dissemination to competitors and others outside of the Company.

17. With access to such highly-sensitive information and trade secrets, including in particular those which he was provided and had access in his role as interim manager under Cox, Buttrick is unusually positioned with the knowledge necessary to engineer a sales strategy that would allow a Company competitor to compete unfairly with West Marine.

18. All of the Confidential Information and trade secrets to which Buttrick had access were the direct result of the Company's investment of substantial time, money, and other resources.

**The Company Took Reasonable Measures to Protect its Confidential Information**

19. The Company has adopted and implemented a range of measures designed to ensure the security of its information, including its Confidential Information and trade secrets, and to protect against the dissemination, disclosure, and misappropriation of its information.

20. Those measures include, without limitation, the following:

    a. Promulgation of written data security policies.

    b. Provision of training to Company employees concerning its policies with respect to the protection of its information, and their obligations to protect and not disclose Company information.

    c. Restriction of access to Company systems and document/data repositories based on an employee's position and need to know or to access the documents, data, and information contained on those systems and in those repositories.

    d. Implementation and use of monitoring controls designed to detect abnormal behavior on the Company's systems, and to provide the IT department with an alert when such behavior occurs.

    e. Reviewing and monitoring, on a routine basis, employee activity on Company systems for the purpose of ensuring compliance with access controls and detecting efforts to evade those controls.

    f. Restricting physical access to Company facilities via an electronic badge-scan security system.

    g. Implementing password or personal identification number ("PIN") protection for all Company data systems, and for all devices capable of accessing the Company's data systems.

21. The Company went to great lengths to ensure that Buttrick was aware that the information shared with him was confidential and, in many cases, constituted trade secrets. For

example, protection of West Marine Confidential Information is specifically referenced in the Company's Code of Ethics. Further, as part of his employment, Buttrick was required to review the Company's security policies, including review and acknowledgment of its Informational Asset Protection Policy, Data Retention and Disposal Policy, Acceptable Use of Information Assets Policy, and Acceptable Use of Mobile Computing Technologies Policy.

22. West Marine's Information Asset Protection Policy defines "Information Asset" as:

a definable piece of information, stored in any manner which is recognized as 'valuable' to the organization. The information which comprises an Information Asset, may be little more than a prospect name and address file; or it may be the plans for the release of the latest in a range of products to compete with competitors.

Irrespective of the nature of the information assets themselves, they have the following characteristics:

- They are recognized to be of value to the organization.
- They are not easily replaceable without cost, skill, time, resources or a combination of these.

23. The Information Asset Protection Policy further provides, among other things, that all Information Assets must be protected in line with their classification and value, Information Assets must only be made accessible to Associates, Contractors or third parties who have agreed to the West Marine Acceptable Use Policy, and access to all Information Assets must be removed when there is no longer a business reason for an Associate, Contractor or other third party to have access to them.

24. West Marine's Acceptable Use of Information Assets Policy further provides, among other things:

- Access to Information Assets must be explicitly authorized by a member of West Marine's management team by Access Request Form.
- **All Information Systems and Information Assets purchased, created or acquired by West Marine are the property of the Company.**

- West Marine Information Systems must be used to facilitate West Marine business.
- West Marine Information Systems must not be used at any time for illegal activities.
- Any hardware provided to an Associate or Contractor to facilitate the business of West Marine, including by not limited to laptops, remains the property of West Marine and should be used in accordance with this policy.

    **Information Assets may not be transferred to non-West Marine Information Assets without written approval.** [emphasis added].

25. West Marine's Acceptable Use of Mobile Computing Technologies Policy further prohibits connecting any portable device to any West Marine system without explicit approval and copying, moving, or storing confidential sensitive data on unencrypted portable devices.

26. The Company's Code of Ethics provides additional information about the treatment of the Company's Confidential Information. The Code of Ethics specifically defines Confidential Information to include, among other things:

- Customer information (such as West Advantage account information, email address or credit card information);
- Financial or operating statistics (such as existing and future marketing and planning strategies, pricing, new products or services in development, customer lists, internal Company manuals, contracts or other details of business relationships); or
- Any other information which, if disclosed, could jeopardize the Company's competitive position or cause harm…

The Code of Ethics makes clear that protecting the Company's Confidential Information is necessary to maintain its competitive advantage and brand and that Confidential Information should be used only for legitimate Company purposes and never for personal benefit or in any other inappropriate way.

**Buttrick Violated His Obligations to the Company By Taking Its Confidential Information**

27. On or about April 3, 2023, Buttrick notified West Marine that he was resigning and going to work for a competitor, Land'n Sea. On information and belief, Buttrick informed West Marine's customers that he was leaving for a competitor well in advance of providing his resignation notice to the Company.

28. On April 3, 2023, the last day of his employment with West Marine, Buttrick returned his Company-issued laptop.

29. A subsequent review of Buttrick's laptop revealed that Buttrick transferred a significant number of confidential Company files to an unauthorized USB storage device on March 27, 2023, seven days earlier. This Confidential Information included:

1. DaveYTD23_ETAR_MidAtlantic.xls
2. YTD_ETAR-MidAtlantic.xls
3. WMProPaint 2022 v5 FINAL.PDF
4. WMPro NE Paint Program Fall 22. PDF
5. TMRTMW 420 Q1 2022 Dave to Bob.xlsx
6. Q2 TMR TEAM 420 Dave to Bob.xlsx
7. NE WM Fall Paint Worksheet.xlsx
8. ETAR Mid March 2023.xls
9. ETAR 2022YTD_ETAR_Mid_Atlantic.xls
10. Budget for 2022 for team 420 View.xlsx
11. 420 Q3 TMR 2022 Dave to Bob.xlsx

30. These eleven files contain some of the Company's most highly sensitive, confidential, and commercially valuable information relating to its product development plans, strategies, and efforts.

31. Several of the files contain lists of all the Company's Northeast Pro Division customers, their contact information, and the revenue generated from each. Another document contains the Pro Division financial plan for the Northeast Region, which included Buttrick's market territory. Yet another document outlined a new selling program the Company had initiated in the fall of 2022. There was also a Non-Disclosure Agreement (NDA) that West Marine uses with its customers.

32. Buttrick had no legitimate reason related to his work for the Company to access and download the files on March 27, 2023, only days before his resignation.

33. When Buttrick accessed and downloaded the above-referenced files on March 27, 2023, he was well-aware that he was resigning from West Marine to work for a competitor.

**The Company Has Suffered and Will Continue to Suffer Imminent Irreparable Harm absent Injunctive Relief**

34. Relevant Company policies, which Buttrick expressly acknowledged, make clear that the Company's Information Assets are of value to the organization and not easily replaceable.

35. The Company will suffer immediate and irreparable harm if temporary and preliminary injunctive relief is not granted.

**COUNT I – VIOLATIONS OF THE MASSACHUSETTS TRADE SECRETS ACT**

36. The allegations in the preceding paragraphs are incorporated as though fully set forth here.

37. The Company is the rightful owner of its confidential, proprietary, and trade secret information as described above, including without limitation the information contained in the files that Buttrick downloaded days before his resignation from the Company, all of which contain information that has commercial value in the Company's business and constitutes trade secrets within the meaning of the Massachusetts Trade Secrets Act, Mass. G.L. c. 93, §§ 42, 42A-42G ("MTSA").

38. The Company's trade secrets derive independent economic value from not being generally known to, or readily accessible by proper means by, the public, and other persons can obtain economic value from their disclosure and use.

39. In his capacity as an employee of West Marine, Buttrick had access to the Company's Confidential Information and trade secrets.

40. This information is not generally available to third parties, including the Company's competitors. It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

41. As more fully described above, the Company has taken reasonable and adequate precautions to protect its confidential, proprietary and trade secret information. Such measures include, but are not limited to, promulgating corporate policies and requiring that employees acknowledge such policies related to permitted access to and use of Confidential Information.

42. Buttrick is prohibited from misappropriating the Company's Confidential Information and trade secrets.

43. Buttrick was aware of the confidential and proprietary nature of the Company's confidential, proprietary and trade secret information, and of his duty not to use such information for his own benefit, or for the benefit of any person or entity other than the Company.

44. On information and belief, during his employment with West Marine and in preparation for his voluntary separation from such employment, Buttrick unlawfully accessed and misappropriated the Company's Confidential Information and trade secrets through improper means and for his own benefit and use and for the benefit of future employers, including Land'n Sea.

45. On information and belief, because of the overlap between the duties that Buttrick now performs for Land'n Sea, a competitor of the Company, and the duties he previously performed for West Marine, Buttrick inevitably will use and/or disclose West Marine's confidential, proprietary and trade secret information for Land'n Sea's economic benefit and will use (or already has used) and/or disclose the Company's trade secrets to its competitor.

46. Upon information and belief, Buttrick took and retained West Marine's Confidential Information and trade secrets before separating from employment with West Marine and commencing employment with Land'n Sea.

47. The conduct of Buttrick was willful and malicious within the meaning of the MTSA.

48. The Company has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless Buttrick is enjoined from continuing to benefit from any unlawful misappropriation of the Company's confidential, proprietary and trade secret information.

49. Unless restrained, Buttrick will continue to misappropriate the Company's trade secrets in violation of the MTSA.

50. As a direct and proximate consequence of Buttrick's conduct, the Company has suffered damages.

51. Buttrick's wrongful conduct was willful, malicious, and done in conscious disregard of the Company's rights, and the Company is entitled to punitive damages and attorneys' fees, and costs in an amount to be proven at trial.

52. Pursuant to the MTSA, the Company is entitled to preliminary and permanent injunctive relief, enjoining and restraining Buttrick from all acts of actual and threatened misappropriation of the trade secrets of the Company.

## COUNT II – VIOLATIONS OF THE DEFEND TRADE SECRETS ACT

53. The allegations in the preceding paragraphs are incorporated as though fully set forth here.

54. During the course of his employment relationship with West Marine, Buttrick had access to the Company's Confidential Information as described above.

55. The Company's trade secrets and Confidential Information, as set out above, constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA").

56. The Company's Confidential Information is not available to the general public and is closely guarded by West Marine. The Company keeps such information strictly confidential to protect and maintain an economic advantage in its industry.

57. The Company's Confidential Information is considered a trade secret under the DTSA because the Company derives independent economic value from this information not

being generally known to the public, the information is not readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and the Company has taken reasonable efforts to maintain the secrecy of this information.

58. The Company's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

59. At all relevant times, the Company has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its information and business intelligence, including trade secrets. Such measures include, without limitation, promulgating corporate policies and requiring that employees agree not to use or disclose Confidential Information and trade secrets of the Company.

60. As demonstrated by his downloading of the Company's Confidential Information in the days immediately before his resignation, Buttrick gathered the Company's trade secrets even when he was in the process of preparing to commence employment with its competitor.

61. Buttrick inevitably will use or disclose the Company's Confidential Information in the course of performing his work for Land'n Sea, a competitor of the Company.

62. Buttrick retained the Company's trade secrets after ceasing employment with the Company and after accepting and commencing employment with Land'n Sea.

63. Buttrick inevitably will use or disclose the Company's trade secrets in connection with performing work for Land'n Sea.

64. As more fully described above, Buttrick misappropriated the Company's trade secrets through improper means.

65. The conduct of Buttrick was willful and malicious.

66. By misappropriating and inevitably using or disclosing the Company's trade secrets, Buttrick has created an unfair advantage for himself and his current employer in competing with West Marine using its own trade secrets.

67. Injunctive relief is therefore appropriate.

68. Accordingly, the Company requests that this Court enter an order enjoining Buttrick from using any of the Company's Confidential Information, and from disclosing the Company's Confidential Information to anyone other than authorized personnel of the Company.

69. West Marine also requests that this Court enter an order requiring that Buttrick immediately return all of the Company's hard copy Confidential Information, and/or trade secrets to the Company and take all steps necessary to effectuate the deletion and/or removal of any of the Company's Confidential Information from all devices (without regard to ownership status) that contain such information.

70. The Company has incurred or will incur substantial damages as a result of Buttrick's misappropriation of its Confidential Information.

71. The actions of Buttrick also have damaged the Company's goodwill, reputation, and legitimate business interests.

72. The Company is therefore entitled to recover from Buttrick not only compensatory damages, but also punitive damages and attorneys' fees resulting from his wrongful misappropriation of the Company's Confidential Information.

## **COUNT III – CONVERSION**

73. The allegations in the preceding paragraphs are incorporated as though fully set forth here.

74. As a result of his downloading and retaining West Marine's Confidential Information and other documents, Buttrick exercised dominion over the personal property of West Marine.

75. The exercise of dominion over the Confidential Information and other documents of the Company was wrongful, it resulted in the appropriation of West Marine's property by Buttrick, and it deprived the Company of its exclusive right to use its Confidential Information. Accordingly, Buttrick converted that Confidential Information to his own use.

76. As a direct and proximate result of Buttrick's conduct, the Company has sustained, and will continue to sustain, actual and/or consequential damages in an amount to be determined at trial, and the Company is entitled to recover such damages from Buttrick in this action.

## COUNT IV – BREACH OF FIDUCIARY DUTY

77. The allegations in the preceding paragraphs are incorporated as though fully set forth here.

78. As more fully described above, West Marine employed Buttrick in a position of significant trust and confidence.

79. As an individual employed by West Marine in a position of significant trust and confidence, Buttrick owed the Company a duty of loyalty that included, but was not limited to, a duty to act in the Company's best interest.

80. During his employment with West Marine, Buttrick owed the Company a continuing duty of loyalty, which included, but was not limited to, safeguarding its Confidential Information and trade secrets, and not interfering with, or taking actions that would disrupt, its business operations or cause it a competitive disadvantage.

81. During his employment with West Marine, Buttrick (a) improperly acquired and retained the Company's Confidential Information for his own benefit with the intent of retaining such information and using it for the benefit of one or more competitors of the Company, and (b) began performing work as an employee of the Company's competitor.

82. As a direct and proximate result of Buttrick's conduct, the Company sustained and continues to sustain immediate and irreparable injury, including, but not limited to, losses in profits and revenues, losses of business relations with current customers, loss of business relations with future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

83. Buttrick's wrongful conduct was willful, malicious, and done in conscious disregard of the Company's rights, entitling the Company to punitive damages and attorneys' fees and costs from Buttrick in an amount to be proven at trial.

## Request for Relief

Plaintiff West Marine respectfully requests that this Court enter judgment for the Company and against Buttrick on each count of this Complaint and further order as follows:

A. Temporarily, preliminarily and permanently enjoining Buttrick from acquiring, accessing, using, disclosing, or misappropriating the Company's Confidential Information and trade secrets and award against Buttrick all of the Company's compensatory damages, exemplary damages, punitive damages, costs and attorneys' fees resulting from such misappropriation;

B. Ordering Buttrick to immediately return to the Company all of the Company's electronic and hard copy Confidential Information, proprietary information, and/or trade secrets and to take all steps necessary to effectuate a forensic examination of all devices capable of performing computing functions or storing electronic information that are owned by, have been

used by, or been accessible to Buttrick at any time since the date six months prior to the date on which Buttrick's employment with the Company terminated, for the purpose of determining how each has accessed, used, disclosed, or misappropriated the Company's Confidential Information, proprietary information, and/or trade secrets;

  C. Granting the Company access to all personal accounts used for electronic data communication purposes by Buttrick so that the Company may determine the extent to which Buttrick (1) retained, used, or disclosed any of the Company's Confidential Information and/or trade secrets, and/or (2) took other actions toward violating his obligations to the Company;

  D. Granting the Company access to any and all devices owned, used or accessed by Buttrick for the purpose of determining if such devices contain copies of the Company's Confidential Information, and permitting the Company to take any other appropriate and reasonable steps to recover its Confidential Information and to ensure that it was not distributed or preserved by Buttrick, in any form;

  E. Restraining Buttrick from in any way divulging, disseminating, or using the Company's confidential and proprietary information in the interim;

  F. Awarding West Marine exemplary damages, punitive damages, costs and attorneys' fees in an amount sufficient to punish Buttrick for his wrongful conduct and deter future wrongful conduct;

  G. Entering judgment against Buttrick and award as against Buttrick pre-judgment and post-judgment interest, plus costs, attorneys' fees and such other and further relief, at law or in equity; and

  H. Providing such further relief as the Court deems just under the circumstances.

**Jury Demand**

Plaintiff demands a trial by jury for all claims so triable.

                        WEST MARINE PRODUCTS, INC.

                        By its attorneys,

                        */s/ Neil V. McKittrick*
                        Neil V. McKittrick (BBO# 551386)
                        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
                        One Boston Place, Suite 3500
                        Boston, MA 02108
                        Telephone: (617) 994-5700
                        Facsimile: (617) 994-5701
                        Neil.mckittrick@ogletree.com

Dated: April 24, 2023